# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 9, 1897.

LOUISA M. BROUMEL
VS.
MAYOR & CITY COUNCIL OF
BALTIMORE.

*Isidor Rayner* and *Wm. B. Rayner* for plaintiff.

*Thomas Ireland Elliott* and *Wm. S. Bryan, Jr.,* for defendants.

DENNIS, J.—

There can be no doubt that the dedication of Chestnut avenue, upon the bed of which the house of the plaintiff was subsequently erected, was complete, the lots binding upon it having been sold by the original owners of the whole property, according to a plat upon which the said avenue was shown, and the deeds of the several lots executed by them also having called for it as a boundary line.

But such dedication is not sufficient to vest title in a street in the City, or to impose obligations upon it with reference thereto, without acceptance by the City in some manner, and such acceptance must be made by the properly authorized local public authorities 2 Dillon vs. Mun. Corp., §642, and cases cited in n. 2.

In this case it is contended by the defendant that the Act of 1890, chap. 628, amounted to an acceptance by the Legislature, on behalf of and in favor of the City, of the dedication of this street, together with all other streets, lanes and alleys similarly dedicated and lying within what is known as the "Belt," (within which Chestnut avenue also is embraced), and is just as effective acceptance of such dedication as if the acceptance had been made directly by the Mayor and City Council, by ordinance or other sufficient action.

Admitting that the Legislature might make such acceptance, both as against and in favor of the Mayor and City Council, by an Act intended for that purpose, I do not think the Act of 1890 had reference to any such street as Chestnut avenue is shown to be.

That Act provides: "That all streets, avenues or alleys, lying in that portion of Baltimore city, formerly constituting a portion of Baltimore county, and in pursuance of the Act of 1888, chapter 98, recently annexed to the said city of Baltimore, which had prior to such annexation, *become* streets, avenues or alleys in Baltimore county, whether by deed or dedication, shall be held for all purposes to validly constitute streets, avenues or alleys of Baltimore city, in all respects as if the same had been *legally condemned* as such by the Mayor and City Council of Baltimore."

Now, it is shown by the evidence that Chestnut avenue has never had any existence except on paper, notwithstanding the many years which have elapsed since its dedication by the original owners of the lots binding on it; as show by the plat according to which the dedication was made, it is a mere *cul de sac,* and has never been laid out or even marked by the binding lot owners.

It seems to me clear, both by the history of the Act and by its terms, that such imaginary streets as Chestnut avenue, and the many others similarly dedicated in suburban property during years past, were never intended to be embraced within its provisions, and that its purpose had no reference whatever to any question of acceptance by the city of such dedications.

The Act of 1890, as is shown by its title, was passed as supplementary to the Act of 1888, Ch. 98, commonly known as the Annexation Act. The latter Act, in making provision for the transfer to the city from the county of jurisdiction over the belt territory, when it came to deal with the question of streets, only gave to the city jurisdiction over those in the belt which "had been *legally condemned.*" This was clearly a *"casus omissus,"* for there could be no reason, under the theory of annexation, why streets which had become public streets in the county by deed or dedication, should not stand on the same footing so far as jurisdiction was concerned, as streets which had become such by con-

demnation; as the rights and needs of the general public and of the local authorities were identical as to each class. To correct this omission the Act of 1890 was passed, and it provides, as we have seen above, that streets, &c., which had become such in Baltimore county by *deed* or *dedication*, should be held to constitute streets in Baltimore city in all respects as if the same had been *legally condemned.* In other words, the sole purpose of the Act of 1890 was to make complete what it was supposed the Act of 1888 had left incomplete, and to transfer to the City as complete and full jurisdiction over all the streets in the belt district, whether they had become streets by condemnation or by deed or dedication, as had been previously vested in the county. In view of this history of the two acts, and the clearly expressed purpose of the Act of 1890, as shown by its title and terms, it is difficult to see how it can be at all considered as having been intended to work a compulsory acceptance by the city of such imaginary streets as Chestnut avenue, the dedication of which had never been accepted by the county, and which existed only on paper, and was laid out and dedicated by the act of the grantor alone for the sole purpose of effecting a more advantageous sale of his property.

But when we look at the disastrous results which would be entailed upon the city by the contrary construction, it becomes still more apparent that the Act of 1890, in the use of the word "streets acquired by deed or dedication," referred only to actual streets, i. e., those which had become such by acceptance by the public authorities, and not to the imaginary ones created by the act of the grantor alone, and in regard to which no obligation rested upon the public authorities and no rights were vested in them. Its terms are that the streets to which it refers shall be streets of Baltimore city "in all respects as if the same had been *legally condemned* by the Mayor and City Council of Baltimore City." What are the obligations imposed upon the city authorities when a street has been condemned? There are many provisions of the ordinances bearing upon this question—all looking to the prompt opening up of the street for public use —but it is scarcely necessary to refer to more than the one contained in Section 21, Article 48, of the Code of Public Local Laws. That section provides that when a street is so opened, i. e., by process of condemnation, it is made the duty of the Street Commissioners, within sixty days after the return of the proceedings to the Register, of the City, "to remove all obstructions," &c., so as to prepare it for use by the public. Now, is it conceivable that the Legislature, by the Act of 1890, intended to impose this obligation upon the City as to all the paper-streets which had been dedicated by the owners of land in Baltimore County at any time in the past?—streets laid out without any reference to the needs of the City, or regard to its topographical plan or survey—some, perhaps, on the top of a hill, or at the bottom of a ravine, and all planned to subserve solely the interest of the property owner in the sale of his property; and with no option left to the city to accept the dedication of those it might wish to adopt, and to refuse to accept such as might be onerous and disadvantageous to it to accept. Surely, the legislature could never have intended to impose so grevious a hardship upon the city. I think the sole object of the Act was simply to give the city the same rights and jurisdiction over such streets as had formerly existed in the county, leaving it free to accept the dedication of such as might suit its plans, and to decline to accept a dedication of those which it might not consider to its interest to accept.

It is contended, however, by the defendants, that even if the Act of 1890 did not work a legislative acceptance of the dedication of all such streets, yet the action of the City Commissioner in sending the notice to the plaintiff directing her to remove as promptly as possible her building from the bed of Chestnut avenue, because the bed of said street was the property of the City, operated as an acceptance by the City of the dedication of that street.

But where did the City Commissioner derive his authority to accept a dedication of a street on behalf of the City? No ordinance or other act of the Mayor and City Council is shown authorizing him to make such acceptance, and such action is not within the scope of his duties as prescribed by the City Code, nor is it one naturally incident to his office. His duties and powers are prescribed in

Section 69, Article 48, of the City Code, and relate to "leveling, making, grading, mending or repairing the streets, lanes, alleys and bridges, and contracting with any person for materials for the purpose aforesaid." It is evident, from the context of this section, that these powers relate to the streets, &c., which actually exist, and there is nothing from which an authority can be implied for him to accept a dedication on behalf of the city of a new or an unopened street. His action, therefore, in giving the notice he did give, was *ultra vires*, if it is to be construed as an attempt at acceptance, in the absence of any action on the part of the Mayor and City Council authorizing it.

But it is also contended that the plaintiff admits in his bill that the Mayor and City Council duly accepted the dedication, and hence he is bound by his admission. The language upon which this contention is based is found in the fifth clause of the bill, in which it is alleged that the Mayor and City Council gave notice that it intended to have the plaintiff's buildings removed, and if not removed they would be taken down by the City Commissioner, and in connection with this allegation the notice of the City Commissioner is filed.

It is true that if the Mayor and City Council did authorize the City Commissioner to give the notice, that act would amount to a complete acceptance by the City of the dedication —as completely so as if the acceptance had been in terms made by an ordinance; but to treat the above allegations of the bill as an admission by the plaintiff that the Mayor and City Council had, by authorizing the said notice to be given, duly accepted the dedication of the street, is a forced and narrow construction, and in view of the other provisions of the bill, wholly unreasonable. It is evident that the intention of the pleader, in that allegation, was simply to recite what had been done by the City Commissioner, and the assumed authority under which the notice was apparently given. As matter of fact, no such authorization was ever made by the Mayor and City Council, nor is it contended to the contrary by counsel for the defendant; and as the whole theory of the bill is based upon the fact that the Mayor and City Council had never, by any act whatever, accepted or authorized the acceptance of the dedication, to give to this allegation the construction now urged by the defendant, would be not only to put upon its language a strained and most unreasonable interpretation, but one that would defeat the whole object of the bill, and to be in discord with every other allegation and subversive of its entire theory.

I will sign a decree for an injunction in accordance with the prayer of the bill.